Shores Lumber Co. vs. Patterson.

SHORES LUMBER COMPANY, Respondent, vs. PATTERSON, Appellant.

*February 10 — March 1, 1898*

*Contracts: Construction: Sale of lumber: Reservation in acceptance.*

By a proposition in writing, made September 18, plaintiff offered to sell to defendant a quantity of lumber of specified dimensions "at $10 per thousand, straight measure, as now piled on their mill dock, or $12 per thousand" delivered at T., lake freights to be paid cash on delivery. The defendant was to accept by wire within two days. It was to be optional with defendant whether to give ninety days' paper or pay cash when the lumber was delivered. The defendant on the same day indorsed thereon the following: "I accept the above price as quoted on [plaintiff's] dock; will wire acceptance on balance contract 20th." On September 21 defendant wired plaintiff to "call off the trade made on the 18th." *Held,* that there was no completed contract, the reservation in the acceptance having been intended to afford opportunity for necessary examination or inspection of the character and quality of the lumber. MARSHALL, J., dissents, being of the opinion that such acceptance merely reserved to the defendant the right to say within two days whether he would pay $2 per thousand extra for delivery at T.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This was an action for the recovery of damages claimed by the plaintiff in consequence of the refusal of the defendant to accept and pay for a certain quantity of lumber on the plaintiff's dock at Ashland, Wisconsin, alleged to have been purchased by the defendant of the plaintiff under the following proposition and acceptance, September 18, 1894:

"New York, Sept. 18th, 1894.

"Mess. *Shores Lumber Co.* per E. A. Shores, president, do offer to sell to *T. G. Patterson* one and one-half million of 8 and 10″, and one half million of 12″ and wider, at $10.00 per thousand, straight measure, as now piled on their mill dock, or $12.00 per thousand delivered on Ollie & McKeen's dock in North Tonawanda, lake freights to be paid cash on delivery. *T. G. Patterson* to accept this offer by Thursday or call it no trade. If accepted wire Mr. E. A. Shores at North Tonawanda, care of Humboldt & Bellinger. Terms, ninety days, or *T. G. Patterson's* option of six per cent. per annum for one third cash.

"[Signed]　　　　SHORES LUMBER CO.

"Pr E. A. SHORES, Pres.

"I accept the above price as quoted on Ashland dock; will wire acceptance on balance contract 20th.

"T. G. PATTERSON."

The plaintiff had, it appeared, the lumber in question on hand at its dock in Ashland, and was ready and willing to deliver the same to the defendant, but the defendant refused to accept the lumber, whereby the plaintiff alleged that he was compelled to sell the same at $8.50 per thousand feet, which was the most the plaintiff was able to obtain for the same after the defendant refused to accept it under the alleged contract. Plaintiff demanded damages for such refusal in the sum of $5,000 and costs.

The defendant answered, admitting that on September 18, 1894, at the city of New York, E. A. Shores, the plaintiff's

president, and representing it, made to the defendant an offer in writing, dated that day, being the same instrument set forth in its complaint and designated as the contract therein between the plaintiff and the defendant; that the defendant concluded that, should he purchase the lumber, he would accept the proposition contained in the offer of the delivery of the same at Ashland at the price therein named, and accordingly indorsed upon said offer his acceptance of the price for delivery at Ashland, reserving the right to examine the lumber and notify plaintiff whether he would take it or not by the following Thursday, the 20th of the same month; that immediately after said offer, through his agent, the defendant did examine the lumber in question, and immediately notified the plaintiff that he would not take the same, and he never accepted the said offer.

At the trial before the court and jury, the defendant demurred to the complaint *ore tenus,* because it did not state facts sufficient to constitute a cause of action, and especially because it did not show any acceptance of the proposition. The court overruled the demurrer.

It appeared that the defendant was engaged in the lumber business, and had charge of a box factory in New York, and had bought considerable quantities of lumber at various times of the plaintiff at Ashland, and that James Madden acted as his agent at that place in buying lumber for him. Mr. E. A. Shores and the defendant met at the office of the latter, September 18, 1894, in the city of New York. At this time E. A. Shores, president of the plaintiff company, submitted to the defendant the written proposition of that date, and the defendant signed and delivered to him the acceptance at the foot of the same. It was shown that the plaintiff then had the quantities of lumber, and of the quality therein stated, on its dock at Ashland; and that Shores left New York the same night, and when he reached his home at Ashland he received telegrams and letters from the defendant, and among others a telegram dated September 21, 1894,

from the defendant, addressed "To *Shores Lumber Company*, Care J. H. Madden: Call off the trade made on the 18th; see J. H. Madden. [Signed] *T. G. Patterson*," and that he received this telegram on the day of its date.

The difference between the contract price of the lumber and the price for which the plaintiff subsequently sold it was $3,885, for which, at the close of the evidence, under the direction of the court, the plaintiff had a verdict, the court having ruled that the written acceptance was an acceptance of the proposition so far as the quality of the lumber was concerned, the place of delivery, and the price; that the second clause of the offer, which reads, " Terms ninety days, or *T. G. Patterson's* option of six per cent. per annum for one third cash,"— was the portion that was left open by the terms of the acceptance; and that the clause, " will wire acceptance on balance of contract," referred to the clause as to the terms of payment.

Evidence was given showing that in the lumber trade, by the terms, "one and one-half million of 8 and 10"," and " one half million of 12" and wider," eight and ten inch white pine, common boards, or twelve inch white pine, common boards, one inch thick, were meant; and that the term "straight measure as now piled on the mill dock," would mean the actual number of feet in the piles, without culling of any kind; that in the trade the expression, "ninety days, or *T. G. Patterson's* option of six per cent. per annum for one third cash," would mean his paper due in ninety days from the date of the inspection sheets at the time the lumber was shipped, leaving it optional to pay in ninety days' paper or cash when the lumber was delivered or payment fell due.

For the appellant there was a brief by *Lamoreux, Shea & Wright*, and oral argument by *C. A. Lamoreux*.

For the respondent there was a brief by *Cate, Sanborn, Lamoreux & Park*, attorneys, and *D. F. O'Keefe*, of counsel, and oral argument by *A. W. Sanborn*.

Shores Lumber Co. vs. Patterson.

PINNEY, J.   We think that, when applied to the situation of the parties and the subject matter with which they were dealing, it is quite plain that the time for complete acceptance of the terms of the proposition, made by the plaintiff to the defendant, related, not merely to the comparatively inconsequential matter of securing two days' time for the defendant to determine whether he would make payment for the lumber in ninety days' paper at six per cent., or cash, when in fact he would not be under any obligation to make payment until delivery of the lumber, which would presumably afford him a reasonable time to determine that matter.   It is evident, we think, judging from the data before us, that the reservation of a right to accept the offer within two days was with a view to make necessary examination or investigation in regard to matters much more material and important, such as securing an examination or inspection of the character and quality of the lumber, the subject of the proposed sale.   The question of the quantity the defendant would purchase, the place where he would accept the delivery of it, and the price he would pay, in view of the state of the market, were all matters he could decide intelligently as soon as the written proposition was handed to him, as he in fact did.   It was otherwise with respect to the character and quality of the lumber.   It is well understood that purchases of lumber are conducted by brokers and agents who are usually at points where large quantities are bought and sold, and so are able to make prompt inspection of lots offered, and to report the character and quality promptly by telegram, so that intending purchasers may act understandingly and have a proper basis upon which to form a practical judgment.   The delay in this case, it is clear, was not secured to enable the defendant to determine whether he would pay cash on delivery, or in ninety days' paper at six per cent.   We are clearly of the opinion that there was no completed contract between the parties,

and, as it was not shown that the defendant ever accepted or agreed to accept the lumber the plaintiff proposed to sell him, he had, therefore, a right to withdraw from the negotiations as he did by his telegram. The construction placed by the court upon the proposition and acceptance relied on was, we think, erroneous. The court, as requested at the trial, should have directed a verdict for the defendant.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.

MARSHALL, J. I cannot concur with the conclusion arrived at in this case. To my mind the meaning of the written acceptance is plain and unmistakable. There was a written proposition to sell appellant a quantity of lumber, located on Ashland dock, at $10 per thousand on such dock, or delivered on the Tonawanda dock at $12 per thousand, in the latter case freight charges to be paid cash on delivery, terms ninety days, with permission to the purchaser of six per cent. per annum for one third cash, and to accept by wire to the seller at Tonawanda by Thursday after the date of the proposition. Such date was Tuesday, September 18, 1894. Appellant immediately wrote on the proposition and delivered the same to the respondent: "'I accept the above, price as quoted on Ashland dock. Will wire acceptance on balance contract 20th." The punctuation is my own; there is none in the original. Now, to say that such acceptance referred only to the price on Ashland dock, and not to the proposal to sell generally, is to give it no significance whatever, and to convict persons, apparently experienced business men, of dealing in a manner not consistent with the way such persons would ordinarily be expected to deal. It must occur to a person reasonably trained in business operations that a mere acceptance of the price, leaving all other questions open, was not of sufficient importance to have been even thought of. Certainly, neither buyer nor seller would

have deemed that of sufficient importance to have called for the formal indorsement in writing on the proposition. To my mind, the purpose clearly was to accept the proposition as made, reserving the right to say, within two days, whether the seller would be allowed two dollars per thousand to deliver the lumber on the Tonawanda dock. As the determination of that question required reasonable time to investigate as to current carrying charges by lake transportation, two days were reserved for that purpose. That construction gives reasonable significance to the acceptance. Lake freights are constantly changing, so it was most natural that a careful business man, before agreeing to pay two dollars per thousand for freight charges from Ashland dock to Tonawanda dock, would take a little time to investigate the subject of what others were charging for like service. With that in view, the purchaser wrote, "I accept the above, price as quoted on Ashland dock. Will wire acceptance on balance contract 20th." That is, by inference, very clearly, I will say by the 20th whether I will pay the additional two dollars for delivery on Tonawanda dock. If the language had been that, or, I will say by the 20th whether to deliver on Tonawanda dock, it would not have been more plain in my judgment. That is the view the trial court took of the contract. I think the judgment should be affirmed.